George LeValley, Appellant, v. A. C. Buckles et al., Appellees.

Equitable Life Insurance Company of Iowa, Appellee, v.
A. C. Buckles et al., Appellees; George
LeValley, Appellant.

September 28, 1928.

F. J. Lund, for appellant.

Burnstedt & Hemingway and Henry & Henry, for appellees.

EVANS, J.—For convenience in the discussion, we shall refer to Case No. 11043 as the *first* case, notwithstanding that it appears in the title hereof as the second case.

This first case was brought by the Equitable Life Insurance Company, to foreclose a first mortgage on a certain farm belonging to A. C. Buckles and wife. Junior lien holders, including George LeValley, were made parties defendant therein. LeValley was the holder of a second mortgage upon the same property. At the time of the institution of the suit, the debtor-defendant, A. C. Buckles, consented to the appointment of a receiver, to take possession of the property during the year of redemption, and Crosley was accordingly appointed as such receiver. Such suit was begun July 15, 1924. Decree was entered therein on October 29, 1924, and execution sale was had on November 29, 1924. LeValley did not appear to such action. At the execution sale, the mortgagee-plaintiff bid the full amount of its judgment. For some reason, not explained in the record, and by some mutual arrangement with the execution defendant, Crosley purported to continue as receiver, and as such he purported to lease the farm to the execution defendant for the year 1925. No redemption was made from the execution sale by any junior lien holder, nor by the execution defendant, and the mortgagee-plaintiff became entitled to a sheriff's deed on November 30, 1925, and the same was accordingly issued, a few days later.

In the meantime, the execution defendant had been farming the land, and, as claimed, had mortgaged the crop to the Farmers National Bank of Webster City. He had, in the first instance, paid some rent to Crosley, the receiver, and later refused to pay any more, or to deliver any rent share. Sometime after the execution sale, and during the year of redemption, the receiver purported to sell gravel from the farm to Hamilton County for road purposes, and a large quantity of such gravel was carried away by the purchaser. This was done pursuant to a mutual arrangement between the receiver and the execution defendant. Crosley received for such gravel the sum of $949. He had also in his hands a balance of rent collected, over and

above disbursements, of $99. This was the state of his account in his report on the date of October 19, 1926. The record does not disclose any specific date of the receipt of any of said funds.

On August 21, 1925, the appellant, LeValley, filed his foreclosure petition in Case No. 11472, being an independent action brought against the Equitable Life Insurance Company and against the receiver and against all the defendants which were named as such in Case No. 11043. His petition prayed for a foreclosure of his mortgage and for judgment upon the notes, and prayed further that he recover from the receiver the money in his hands as proceeds of rent and proceeds of gravel sold. He averred that his right to a lien upon such proceeds had become superior to that of the Equitable Life Insurance Company, because its debt had been satisfied in full by the execution sale.

On the same date, August 21, 1925, he filed in Case No. 11043 an application, similar to the prayer of his petition, that the receiver be required to turn over to him the money in his hands. The execution defendant, Buckles, and the Farmers National Bank, an alleged chattel mortgagee of the crops, joined in a motion to strike such application, on various grounds, and such motion was sustained on May 10, 1926. On a later date, and after it had acquired its sheriff's deed, the Equitable Life Insurance Company appeared, and, in resistance to the application of the appellant, it claimed the proceeds of the sale of gravel which had been removed from the premises during the year of redemption. On the issue between the appellant and the Equitable Life Insurance Company, the court held, in substance, that the latter was entitled to the proceeds of the sale of gravel. On the other issue, as between the appellant and the execution defendant and the alleged chattel mortgagee, the court held, in substance, that the appellant had never acquired any lien on the crops or rents. The last two statements constitute a rather broad generalization of the action complained of. The details of the record, as presented to us, are in great confusion. A succession of motions to strike and counter motions likewise to strike were filed. Each succeeding motion asked to strike the preceding one. Such was the form of the combat. We find it quite impossible, upon the record before us, to unravel the confusion of the procedure. The objective of the plaintiff, however, was plain, and likewise the adverse ruling. We shall aim, therefore,

as far as possible, to deal with the case upon its larger merits, rather than to deal seriatim with specific motions and counter motions.

Though the appellant filed his application in Case No. 11043 and his petition in the independent action No. 11472 on August 21, 1925, eight days before the expiration of his period of redemption, yet he did not serve his notices until October 25, 1925. No jurisdiction was, therefore, acquired over any adverse parties prior to such date. The decree entered in No. 11043 October 29, 1924, was final as to him. He had asked no relief in such case, but suffered decree by default.

The foregoing is, perhaps, a sufficient statement of the record to enable a consideration and understanding of the two ultimate questions presented. These are:

(1) On the issue between appellant and the Equitable Life Insurance Company, as to the proceeds of the gravel, was the appellant entitled to recover?

(2) As to the proceeds of rents or crops in the hands of the receiver, had the appellant ever acquired any lien thereon?

I. We shall consider the first issue, as to the proceeds of the gravel. The Equitable Life Insurance Company was the execution purchaser, November 29, 1924. The gravel was removed from the mortgaged premises in the summer of 1925. Its removal was a damage to the real estate, in a legal sense. Under our statute, the right to recover for such damages inflicted during the year of redemption was held in suspense during the year of redemption. Section 11747, Code of 1924 (Section 4065, Code of 1897), provides:

"11747. When real estate has been sold on execution, the purchaser thereof, or any person who has succeeded to his interest, may, after his estate becomes absolute, recover damages for any injury to the property committed after the sale and before possession is delivered under the conveyance."

Upon the expiration of the year of redemption, the recipient of the sheriff's deed became entitled to recover damages for any injuries to the real estate sustained pending the year of redemption. Construing this statute in *Wissmath Packing Co. v. Mississippi River Power Co.*, 179 Iowa 1309, 1325, 1326, we said:

"The purpose and effect of this statute is to protect the execution purchaser against intervening waste and spoliation after he has bound himself by his bid and before he has become entitled to take title or possession. If, before the expiration of the statutory year of redemption, the mortgagor shall redeem, then the claim of the execution purchaser is fully discharged, and he has no further interest in the question of waste or damages. In other words, the statute subjects such a claim for damages to the same lien as the land itself. If no redemption be made, then the execution purchaser is entitled to demand all the property upon which he placed his bid, or its equivalent in the form of damages. In such event, the owner of the land, as mortgagor, loses the right to claim intervening damages in the same way and at the same time that he loses his land, viz., by the failure to redeem from the debt within one year. If he does redeem, then both the land and the claim for intervening damages continue to be his. Under the statute, the claim for damages inures to the benefit of both debtor and creditor. The claim of the creditor is paramount in the same sense that his lien is paramount to the debtor's title. Such paramount right, however, is contingent only, and is wholly subject to the will and act of the debtor. In a legal sense, it is at all times within the power of the debtor to discharge the lien of the creditor, and thereby to protect both his title and his cause of action for damages."

If the appellant herein, as a junior creditor, had redeemed from the execution sale, and as such had received a sheriff's deed, then he would be entitled to recover such damages. If the execution debtor had redeemed, then he would be entitled to the same. If the execution purchaser had a right to claim damages for the removal of the gravel, he necessarily had an equal right to waive the tort, and accept in satisfaction of his claim the tendered value. In this case, the execution debtor had consented to the removal of the gravel at a stated consideration. He did not thereby enlarge his own rights, nor could he thereby cut off the rights of the execution purchaser. The gravel was a part of the soil. No junior creditor nor the debtor himself had any right, as against the execution purchaser, to remove any gravel during the year of redemption. This item was properly awarded to the execution purchaser. This disposes of the major part of the controversy.

II. Was the appellant entitled to recover the balance of proceeds of rents or crops in the receiver's hands? This depends on the further question whether he had acquired a lien upon them. It is clear that he had acquired no lien prior to October 25, 1925. Did he acquire a lien at that time? If so, upon what? His petition prayed that his mortgage be foreclosed, and the lien thereof established, and that his judgment be declared a lien upon the rents, crops, and profits and upon all crops raised upon the said land during the year beginning March 1, 1925, and that it be a lien also upon the proceeds in the hands of the present receiver, who was made a party defendant. He did not in terms pray for the appointment of a receiver. The lien of his mortgage had fully expired on August 29, 1925. He had no mortgage lien upon the land after that date. If, prior to that date, he had acquired a lien upon the crops by an appropriate action, it might plausibly be claimed that the later expiration of his lien upon the land would not necessarily discharge the lien which he had previously acquired on the crops. What our holding should be in such a case we need not now consider. The question now presented to us is whether a mortgagee of lands who has suffered the loss of his mortgage lien on the land, and who has no further right to foreclose his mortgage upon the land, may, nevertheless, acquire, in the first instance, after the expiration of his lien upon the land, a lien upon the growing crops. We have held that he cannot acquire a lien upon the crops, except by commencing foreclosure of his mortgage on the land. His acquisition of a lien on the crops is incidental to his foreclosure suit. Ordinarily, the purpose of a receivership is to collect rents or produce crops *during the year of redemption*. The appellant's year of redemption had fully expired before he asserted a lien upon the crops. He is not claiming a lien upon future rents to accrue, or crops to mature, but upon rents and crops already accrued and matured. In *Haning v. Dunlop*, 203 Iowa 48, we held that this was not permissible, and especially so as to rents and crops previously sequestered by an earlier receivership. In *Stamp v. Eckhardt*, 204 Iowa 541, we held that, when a foreclosing plaintiff bids the full amount of his judgment at the execution sale, the receivership obtained by him terminates instanter. In such case, the receiver's possession of

property becomes the possession of the execution debtor, who is immediately entitled thereto. We held in the same case that, even though such receivership be nominally existent, it is not available as such to a junior mortgagee who subsequently forecloses his mortgage upon the same land; that such junior mortgagee can acquire a lien upon the rents and crops only upon application for appointment of a receiver.

In the case before us, the appellant did not ask for the appointment of a receiver. He simply sought to avail himself of the pending receivership. This was legally nonexistent, as we held in the *Stamp* case. Our holding in such case is quite decisive of appellant's rights at this point. The holding in that case being applied herein, the appellant did not acquire any lien upon rents or crops. Whether he could have done so after the expiration of his lien upon the land, we need not determine.

III. Though the appellant lost his right to foreclose his mortgage against the mortgaged land, his right to a personal judgment against his debtors was not thereby affected. The trial court dismissed his petition, and entered judgment against him for costs. This operated as an adjudication against his right to recover a personal judgment. The form of the entry was doubtless inadvertent, the attention of all parties at the time being concentrated upon disputed questions. The order of the court below will be modified so as to award personal judgment to the appellant upon his note. In the apportionment of costs, no cost of printing will be taxed against the appellant in favor of either appellee. The appellant will pay all other costs.

The judgment below is, accordingly,—*Modified and affirmed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.